IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                              Criminal No. 3:14cr44-01

TAMARA WILLIAMS

**MEMORANDUM OPINION**

This matter is before the Court on the defendant's *pro se* MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release) (ECF No. 159) and the defendant's MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT (ECF No. 183). Having considered those documents, the United States' Response in Opposition to Defendant's Motion for Compassionate Release (ECF No. 184), the JOINT STATUS REPORT (ECF No. 186), the position of the United States Probation Office (ECF No. 187), the file and the Presentence Report (ECF No. 161), the defendant's *pro se* MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release) (ECF No. 159) and the defendant's MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT (ECF No. 183) will be denied.

BACKGROUND

Tamara Williams pled guilty to a conspiracy to distribute and possess with intent to distribute 500 grams (g)(1). Williams was also named in a one count Criminal Information charging with him

Disposal of Firearm to Prohibited Person, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and 841(b)(1)(B)(ii). According to the record and the presentence report, when his residence was searched, Williams was found in possession of three kilograms of cocaine and a .45 caliber semi-automatic handgun (Ruger). At the time, Williams acknowledged that he had received the cocaine from his supplier and that he intended to distribute it. Williams' criminal history category was III and reflected two previous convictions for drug dealing and a juvenile conviction for robbery (which is important only because the defendant's brief argues that he no history of violent conduct). Further, Williams committed the offense of conviction while still serving a five- year period of good behavior on a previous drug distribution conviction in Maryland.

On August 28, 2014, Williams was sentenced to 135 months of imprisonment to be followed by four years of supervised release. That sentence was reduced to 120 months in 2016 under retroactive amendments to the sentencing guidelines (ECF No. 115). His projected release date is July 22, 2022.

At the time that Williams filed the motions at issue, he was confined in FCI Gilmore. Afterward, he was transferred to FCI Oakdale I.

2

Williams bases his request for compassionate release on the contention that two of his medical conditions, hypertension and latent tuberculosis (with supraventricular tachycardia) put him at an increased risk of serious illness if he were to contract COVID-19. On January 27, 2021, Williams tested positive for COVID-19 but the records indicate that he was isolated, that he remained asymptomatic. By February 10, 2021, Williams' case of COVID-19 had been resolved with no severe consequences.

## DISCUSSION

The applicable statute, 18 U.S.C. § 3582(c)(1)(A), provides, in pertinent part, that, upon appropriate motion, the Court "may reduce the term of imprisonment . . . if it finds that 'extraordinary and compelling reasons' warrant such a reduction." It is settled that the burden is on the defendant to prove that extraordinary and compelling reasons exist for compassionate release under § 3582(c)(1)(A)(i). United States v. White, 378 F. Supp.3 784, 785 (W.D. Mo. 2019).

The "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering the Bureau of Prison's statutory role, and extensive professional efforts to curtail the virus' spread. United States

v. Raia, 954 F.3d 594, 597 (3rd Cir. 2020). In assessing whether the record shows the existence of extraordinary and compelling reasons for compassionate release, courts consider, inter alia, the guidance of the CDC, and non-binding policy statements of the United States Sentencing Guidelines. See United States v. Beck, 425 F. Supp. 3d 573, 581-82 (M.D.N.C. 2019). The policy statements are not binding but are informative and may be considered. United States v. McCoy, 981 F.3d 271, 276 (4th Cir. 2020). The cases teach that, to constitute extraordinary and compelling reasons for compassionate release, medical conditions must be serious. Also, it is generally true that "chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." United States v. Ayon-Nunez, No. 1:16-cr-130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020).

To establish existence of "extraordinary and compelling" reasons for compassionate release because of COVID-19, the defendant must show "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at [his] prison facility." United States v. White, ___ F. Supp.3d ___, 2020 WL 1906845, at *1 (E.D. Va. April 23, 2020) (quoting United States v. Feiling, 453 F. Supp.3d 832, 840 (E.D. Va. 2020)).

4

### 1. Particularized Susceptibility

The defendant has established that he suffers from hypertension which the CDC recognizes as presenting an increased severity of consequences if COVID-19 is contracted. He also has latent tuberculosis and supraventricular tachycardia, neither of which has the CDC placed in the increased risk category. However, the fact that a defendant has established a higher susceptibility to COVID-19 does not resolve the particularized susceptibility requirement because identified risk factor conditions must be serious to constitute extraordinary and compelling reasons. It appears from the record that the conditions on which Williams bases his motion are "chronic conditions that can be managed in prison [and thus] are not a sufficient basis for compassionate release." United States v. Ayon-Nunez, No. 1:16-cr-130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020). In addition, Williams has not established that his medical needs cannot be met while incarcerated and, indeed, the medical records filed herein outline that he receives regular medical care, adjustment of his medications, and testing related to the chronic health issues. Moreover, Williams actually contracted COVID-19, was asymptomatic, and has recovered from it without serious consequence.

In sum, Williams has not met the particularized susceptibility risk facet of the applicable test.

### 2. Particularized Facility Risk

Nor has Williams met the particularized facility risk component of the appropriate test. His motion cites press releases respecting the instances of COVID-19 among inmates and staff at BOP facilities nationwide, but provides no real evidentiary support of a particularized risk of contracting the disease at FCI Oakdale I, the defendant's facility of incarceration. Further, the record reflects that, at the time of the filing of the Government's papers, FCI Oakdale I had one active case of COVID-19 among inmates, 26 active cases of COVID-19 among staff, and that 227 inmates and 21 staff members had previously recovered from COVID-19. While FCI Oakdale I lost seven inmates to COVID-19 (apparently before Williams arrived), the record shows that all inmates who have tested positive are being appropriately treated and isolated in accord with the appropriate CDC guidelines that have been adopted by the Bureau of Prisons.

### 3. Assessment Under 18 U.S.C. § 3553(a)

But, even if Williams had met the particularized risk assessment and the particularized facility assessment (which he has not), it would be appropriate to deny compassionate release in perspective of the sentencing factors prescribed by 18 U.S.C. § 3553(a). Compassionate release, of course, is appropriate only where the defendant is not a danger to the safety of any other

6

person or of the community. The defendant argues, in conclusory fashion, that he is not a danger to the community. That, he says, is largely because he has no record of violence. That, however, is erroneous because, as a juvenile, he was convicted of robbery. Moreover, Williams has long been engaged in drug trafficking. The offense of conviction involved more than three kilograms of powder cocaine and was committed while Williams was on release for an earlier drug trafficking conviction. And, Williams was caught with a semi-automatic .45 caliber pistol along with his substantial supply of cocaine. That history bespeaks a significant risk of danger to the community and a need for Williams to serve the full sentence so as to deter him from yet more drug trafficking and to protect the public.

## CONCLUSION

For the reasons set forth above, the defendant's *pro se* MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release) (ECF No. 159) and the defendant's MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT (ECF No. 183) will be denied.

It is so ORDERED.

/s/ *Robert E. Payne*
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: May __, 2021